IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Clifton Daryl Ray Liewald, | ) | Case No. 8:16-cv-00859-RBH-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Warden McFadden, Capt. Brightharp, | ) | |
| Lt. R. Cooper, Capt. Thompson, Tamara | ) | |
| Ravenell, Sherisse Burch, Nurse Holcomb, | ) | |
| Armet Coles, Major Ford, Major Nettles, | ) | |
| and Christine Long, | ) | |
| | ) | |
| Defendants.[1] | ) | |

This matter is before the Court on a motion to dismiss, or in the alternative, for summary judgment filed by Defendants. [Doc. 150.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

Plaintiff, proceeding pro se, filed this action on March 16, 2016,[2] alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. [Doc. 1.] On March 17, 2017, the

---

[1] During the pendency of this action, several Defendants have been dismissed and one Defendant has been added. This caption represents the current parties to the litigation. On April 21, 2016, the undersigned construed that Plaintiff listed Lieber CI and Kershaw CI as a description of where certain prison officials were employed and not as separate Defendants. [Doc. 19 at 1.] On March 17, 2017, the undersigned granted Plaintiff's motions to amend the Complaint, terminated Warden Blackwell and Lt T. Cooper as Defendants, and added Christine Long as a Defendant. [Docs. 89; 116; 118.] In his Amended Complaint, Plaintiff has also corrected Capt. Thomas to Capt. Thompson and Armand Cole to Armet Coles. [Doc. 118.]

[2] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Accordingly, this action was filed on March 16, 2016. [Doc. 1-6 at 2 (envelope stamped as received by prison mailroom on March 16, 2016.]

undersigned granted Plaintiff's motions to amend the Complaint and directed the clerk to file Plaintiff's proposed Amended Complaint and exhibits as the Amended Complaint.[3] [Doc. 116.]

On May 22, 2017, Defendants filed a motion to dismiss or in the alternative for summary judgment. [Doc. 150.] On May 23, 2017, the Court issued an Order in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment/dismissal procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 151.] Plaintiff filed a response in opposition to Defendants' motion for summary judgment [Doc. 153], and Defendants filed a reply [Doc. 154]. The motion is now ripe for review.

## BACKGROUND[4]

At the time he filed this action, Plaintiff was in the custody of the South Carolina Department of Corrections ("SCDC") and housed at Kershaw Correctional Institution ("Kershaw"). [Doc. 1 at 3.] The events giving rise to Plaintiff's Complaint occurred while he was in the custody of the SCDC and housed at both Lieber Correctional Institution

---

[3]Plaintiff's Amended Complaint lists T. Cooper as a Defendant, but after moving to amend and prior to the filing of his Amended Complaint, Plaintiff requested to dismiss T. Cooper. [*See* Docs. 103 at 1; 116 at 3–4.] Thus, T. Cooper has been terminated as a party to the action. [*See* Doc. 116 at 4.]

[4]The facts included in this Background section are taken from Plaintiff's Amended Complaint. [Doc. 118.] In his Amended Complaint, Plaintiff refers to exhibits filed with his original Complaint and with a previously filed motion for summary judgment. [Docs. 1; 79; 118.] Thus, the Court will rely primarily on Plaintiff's Amended Complaint and will construe the Amended Complaint to include the referenced exhibits from his original Complaint and motion for summary judgment.

("Lieber") and Kershaw. [*Id.*] Plaintiff is currently housed at Allendale Correctional Institution ("Allendale"). [Doc. 127.]

Plaintiff alleges that after a riot in July 2014, he and other inmates were sent to the "flood zone." [Doc. 118 at 2.] He contends that his roommate, David Blanding ("Blanding"), was a gang member and that Plaintiff told Lt. R. Cooper ("R. Cooper") that he did not feel safe with Blanding, but R. Cooper ignored Plaintiff. [*Id.*] Plaintiff contends that he requested, on many occasions, not to be placed in a cell with certain inmates because he fears for his life, but Defendants have ignored him. [*Id.*]

Shortly before September 12, 2014, while smoking marijuana with his roommate, Blanding told Plaintiff of a plan to take the dorm over again. [*Id.* at 3.] Plaintiff decided to tell the prison authorities about the plan, but he wanted to be discreet. [*Id.*] Plaintiff called his father and requested that he contact contraband officers to pull Plaintiff out of his cell so that Plaintiff could relay the information to prison officials. [*Id.*] Plaintiff contends that when prison officials removed him from the cell and searched it, they collected knives, but not a pipe he had warned them about. [*Id.*] Plaintiff reminded prison officials where the pipe was located and contends that they removed the pipe from the secret hiding place in front of Plaintiff's roommate. [*Id.*] Plaintiff alleges that their actions resulted in him being exposed as an informant to "a whole dorm of gang members." [S*ee Id.*] Plaintiff was then placed into protective custody, and Plaintiff alleges that he informed prison officials that he would need to remain in protective custody in order to be safe. [*Id.*] Plaintiff contends that when he went in front of the protective custody board he informed Warden Blackwell ("Blackwell") and Tamara Ravenell ("Ravenell") that it was not safe for him to be removed from protective custody. [*Id.*] Purportedly, Blackwell noted that "they would be the judge

3

of that" with regards to Plaintiff's fears that he would be unsafe if returned to general population. [*Id.*] Plaintiff contends that ignoring his safety concerns, the State Classification Committee determined his request for protective custody "invalid." [*Id.* at 3–4.]

Plaintiff alleges that Ravenell then began placing him in cells with one gang member after another, despite his requests for roommates with whom he felt safe. [*Id.* at 4.] Plaintiff alleges that, during this time, a "high ranking blood" put a hit out on him because Plaintiff was blamed for the loss of substantial contraband materials. [*Id.*] Plaintiff contends that he relayed his safety concerns during meetings with his mental health counselor Sherisse Burch ("Burch") and that Burch responded that she was interested only in his mental health. [*Id.*] Plaintiff contends that in July, when he was sent back to general population, he was jumped within days, beaten, and stabbed in the back. [*Id.*] He did not seek treatment for his wounds because he feared further attacks and being labeled as a snitch. [*Id.*] Plaintiff attests that he was attacked again by the same group in August and stabbed seven times. [*Id.*] Plaintiff did get medical treatment for his injuries after this attack, but he was placed back in lock up. [*Id.*] He alleges that his right knee now "pops out of place," but medical refuses to x-ray or treat it due to his placement in the Restricted Housing Unit ("RHU"). [*Id.* at 5.] Plaintiff alleges that Nurse Holcombe ("Holcombe") wrongfully denied him the use of a knee sleeve or ace wrap due to his lockup status even though he received one a year later while in lockup. [*Id.*]

Plaintiff asserts that after his attack, he was scared to leave his cell, including to shower. [*Id.* at 4.] Plaintiff alleges that Ravenell placed the man who stabbed him only a few cells away and that Plaintiff had to endure listening to death threats from that individual

for weeks. [*Id.* at 4–5.] Plaintiff further alleges that when he filed his lawsuit on March 16, 2016, that he had only showered once since September because he feared leaving his cell. [*Id.* at 5.] Plaintiff alleges that he has had to arm himself since the attacks because prison officials refused to protect him. [*Id.*] Plaintiff further contends that Burch, his mental health counselor, removed him from her care. [*Id.*] Plaintiff contends that he wrote to Capt. Thompson ("Thompson") and Warden McFadden ("McFadden") about his security concerns and fears, but did not receive a response. [*Id.* at 5.]

Plaintiff was later transferred to Kershaw, despite requesting to remain at Lieber where he contends he at least knew who had it out for him. [*Id.* at 6.] At Kershaw, he contends he was placed with "30 of the most violent inmates" in the state. [*Id.*] Plaintiff overheard plans by inmates to riot and take over the dorm. [*Id.*] Plaintiff requested to be pulled out and told Major Ford ("Ford") about the inmates' plans, after being promised Ford would "get [Plaintiff] away from these men." [*Id.*] Plaintiff alleges that prison officials once again exposed to the other inmates that Plaintiff told officials about their plans. [*Id.*] Plaintiff even received an apology letter from one of the officials for exposing him. [*Id.*] Plaintiff seeks a declaration that Defendants violated his rights under the Constitution; an injunction requiring Defendants to place him on statewide protective custody; mental health treatment; and compensatory damages in the amount of $150,000.00 from each defendant and punitive damages for physical harm, having his life placed in danger, fearing for his life, and having medical attention refused by the SCDC.[5] [*Id.* at 8–9.]

## APPLICABLE LAW

---

[5]In his original Complaint, Plaintiff requested different relief. [*See* Doc. 1; *see supra* n. 5.]

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any

> person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional

7

deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Motion to Dismiss Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well-pleaded allegations, the United States Supreme Court explained

the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright

& Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he

pleading must contain something more . . . than a bare averment that the pleader wants

compensation and is entitled to it or a statement of facts that merely creates a suspicion

that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than

a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at

556). The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the

pleader must plead sufficient facts to show he is entitled to relief, not merely facts

consistent with the defendant's liability. *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ.

P. 8(a)(2)); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are

'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (quoting *Twombly*, 550 U.S. at 557)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). If on a motion pursuant to Rule 12(b)(6), matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment.

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the

non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

Defendants argue that they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies.  [Doc. 150-1 at 5–7.]  The Court agrees.

Section 1997e provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  A Defendant has the burden of establishing that a plaintiff failed to exhaust his administrative remedies.  *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ."  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983."  *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process).  *But see Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad").  Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes all steps of a prison's grievance procedure, and that § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court.  *See, e.g.*, *Ayre v. Currie*, No.

05-3410, 2007 WL 3232177, at \*7 n.5 (D.S.C. Oct. 31, 2007); *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at \*4 n.3 (D.S.C. May 15, 2006).

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint. *Jones*, 549 U.S. at 211–12; *Custis*, 851 F.3d at 361. However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust. *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (unpublished opinion) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))); *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

Pursuant to the SCDC Inmate Grievance Procedure, an inmate seeking to complain of prison conditions must first

> attempt to resolve the his/her issue through an Informal Resolution by submitting a Request to Staff Member Form (RTSM) or Automated Request to Staff Member (ARTSM using the Kiosk) to the appropriate supervisor/staff within eight (8) working days of the incident. . . . After receiving a response to the RSTM or ARTSM the inmate would file a Step 1 grievance by filling out an Inmate Grievance Form 10-5. The Step 1 Grievance Form 10-5 requires the inmate to include a copy of the RTSM that was submitted or a Kiosk reference number where he/she shall have filed an ARTSM. . . . If the inmate is not satisfied with the response to his/her Step 1 Grievance, the inmate must appeal that response by submitting a Step 2 Grievance 10-5A Form to the [Inmate Grievance Coordinator ("IGC")] within five (5) calendar days of receipt of the response to the Step 1 Grievance. . . . The response to the Step 2

13

> Grievance, or appeal, is considered to be SCDC's final agency
> decision on the issue.

[Doc. 150-2 at 2–3 (alteration added) (paragraph numbers omitted).[6]]

In this case, even when viewing the facts in the light most favorable to Plaintiff, he has failed to establish that he exhausted his administrative remedies. Importantly, exhaustion must occur *prior* to filing of the lawsuit, it cannot happen during the pendency of the litigation. *See Germain v. Shearin*, 653 Fed.Appx. 231, 234 (4th Cir. 2016) (finding that exhaustion has not occurred if an institution's appeal process would have to continue after the filing of the complaint); *Cabbagestalk v. Ozmint*, No. 9:06-3005-MBS, 2007 WL 2822927, at *1 (D.S.C. Sept. 27, 2007) (finding that administrative remedies must be exhausted on the date of filing, and that "if exhaustion was not completed at the time of filing, dismissal is mandatory" (citing *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003)). Plaintiff, in his original Complaint, admits that as of March 8, 2016, the date he signed the Complaint, he had neither filed any grievances related to the claims asserted in the instant matter nor received a final agency response. [Doc. 1 at 3.] Additionally, Defendants have provided an affidavit from Sherman Anderson, Chief of the Inmate Grievance Branch for SCDC. [Doc. 150-2.] His affidavit provides Plaintiff's grievance history and avers that Plaintiff did not exhaust the administrative remedies available to him. [*Id.*] Plaintiff appears to concede that he has not exhausted his administrative remedies; arguing instead that

---

[6]Sherman Anderson's affidavit notes that the grievance policy can be found online. The web address provided in the affidavit, however, is no longer valid. The Court was able to locate the Inmate Grievance Policy, SCDC Policy GA-01.12, by visiting the following web address: http://www.doc.sc.gov/policy/policy.html, and choosing the link for GA-01.12.

Defendants prevented him from grieving his claims. [*See* Doc. 153 at 3–4 ("I have literally been trying to grieve this issue almost 2 years".]

Liberally construed, Plaintiff argues in the instant case that his failure to exhaust occurred because the administrative process was unavailable to him. [*See* Doc. 118 at 7 (asserting that he could not file a grievance because he never received an answer to his request to staff member); Doc. 153 at 3–4 (asserting that Defendants deliberately blocked and ignored all of Plaintiff's attempts to grieve or exhaust administrative remedies).] The district court is obligated to ensure that any defects in exhaustion were not procured from action or inaction of prison officials. "An administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Thus, when prison officials prevent inmates from pursuing grievances via the administrative process, "the process that exists on paper becomes unavailable in reality. *Zander v. Lappin*, 415 F. App'x 491, 492 (4th Cir. 2011). To prove unavailability, however, the inmate must "adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure." *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011).

Here, Plaintiff has failed to meet his burden and relies only on conclusory allegations. *See Anderson*, 477 U.S. at 248 (holding that conclusory allegations or denials, without more, are not enough to overcome a summary judgment motion). Plaintiff asserts that his attempts to grieve were blocked and ignored [Doc. 153 at 3], but has provided no evidence to support that assertion. The Court has endeavored to review Plaintiff's response in opposition and although Plaintiff refers to and attaches several exhibits regarding his attempts to exhaust, his documentation largely post-dates the filing of this

lawsuit. [*See* Doc. 153-1.] Indeed, Plaintiff admits that he first attempted to grieve the matters giving rise to his Complaint on March 17, 2016. [Doc. 153 at 4.] Plaintiff's case was filed on March 16, 2016. [Doc.1]; s*ee Cabbagestalk*, 2007 WL 2822927, at *1 (requiring that administrative remedies be exhausted on the date of filing). As such, Plaintiff has failed to meet his burden of showing that, through no fault of his own, he was prevented from completing the administrative process. Thus, because Plaintiff failed to exhaust his administrative remedies, Defendants' motion for summary judgment should be granted.[7]

## RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment [Doc. 150] be GRANTED.

IT IS SO RECOMMENDED.


November 20, 2017                                         S/Jacquelyn D. Austin
Greenville, South Carolina                       _____
                                                                  UNITED STATES MAGISTRATE JUDGE

---

[7]Defendants raised Plaintiff's failure to exhaust administrative remedies in their motion to dismiss, or in the alternative, for summary judgment. [Doc. 150.] Because the Court finds Plaintiff failed to exhaust his administrative remedies, the Court declines to address the remaining arguments in Defendants' motion [Doc. 150].